**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert E. WALSH, Defendant-Appellant.**

**No. 14750.**

United States Court of Appeals
Sixth Circuit.

July 10, 1962.

James J. Carroll, Cleveland, Ohio, for appellant.

Burt W. Griffin, Asst. U. S. Atty., Cleveland, Ohio (Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, on the brief), for appellee.

Before CECIL and WEICK, Circuit Judges, and BOYD, District Judge.

CECIL, Circuit Judge.

The appellant, Robert E. Walsh, was tried in the United States District Court for the Northern District of Ohio, Eastern Division, without a jury, on a three-count indictment involving counterfeiting of United States currency. He was convicted on all three counts and sentenced to imprisonment for three years on each count, the sentences to run concurrently.

The first count charged a conspiracy with one Hugh Lynn to unlawfully counterfeit United States twenty-dollar bills, without authority of a proper officer of the United States and in violation of Section 474, Title 18 U.S.C. The second count charged the appellant with counterfeiting United States twenty-dollar obligations, and the third count charged that he had such a counterfeited obligation in his possession, knowing it to be counterfeit, with the intention of selling and illegally and fraudulently using it.

Upon consideration of the record in the case, we find that there was ample evidence of the appellant's guilt to warrant the trial judge in denying his motions for acquittal at the close of the government's evidence and at the close of all of the evidence. It was sufficient, too, to justify a finding of guilty by the trier of the facts.

We turn now to the particular assignments of error. It is claimed that the trial judge erred in not permitting the defense counsel to impeach and cross-examine a defense witness, Shirley Ann

Lynn, the wife of the counterfeiter. We find no merit to this contention.

This witness is the wife of Hugh Lynn, the alleged co-conspirator of the appellant and who was the chief witness of the government. Her testimony is in sharp conflict with that of the appellant and there is nothing in the record that would give his counsel any reason to believe that she would testify any differently than she did. The government did not put her on as a witness. The defense put her on the witness stand as its own witness and it appears that counsel for the appellant then sought to cross-examine her as though she had been called by the government. She was asked how many times Mr. Walsh had been to her house and she answered, several times. She was then asked if she had not, in a conversation with the appellant, on March 21, 1961, in the presence of his uncle, said that he was there only once and that a fight had ensued. She said: "I had not stated that." Counsel then asked leave to impeach her. The trial judge said: "She denies what you have said. What is there to impeach?" There was no indication of hostility or that counsel was taken by surprise, and we think the ruling was correct.

The court gave counsel leave to make a proffer out of his hearing and cautioned counsel for the government to check the proffer with the witness. Counsel for the appellant then made a long proffer, the substance of which was primarily to the effect that the witness, if permitted to testify under cross-examination, would testify that she and her husband had agreed to testify favorably to the appellant for ten thousand dollars ($10,000). Counsel for the government then questioned her and she denied that she would testify to any such story.

Examination by counsel for appellant was resumed on the record. Further questions were asked concerning the ten thousand dollars and the March 21st date. The substance of this was that the *appellant had offered her ten thousand dollars ($10,000) for her testimony.* This further examination ended with a

conference at the bench, after which both counsel said there were no further questions. No ruling by the judge appears in the record at this point.

Another assignment of error is that the court refused to admit testimony on the part of Dan Goldstein and the appellant that the appellant's duties at the Coral Bar kept him busy for an hour or an hour and a half after the bar closed at 3:30 a. m. The purpose of this was to show that the appellant could not have been at Hugh Lynn's house at night, between June 5th and 11th, as testified to by Lynn. The court excluded the testimony of Goldstein for the reason that he was not at the bar during that week and therefore would have had no personal knowledge of what the appellant did. The appellant denied that he was at Lynn's house, as testified to by Lynn. His testimony that he had duties at the bar after 3:30 a. m. could rise no higher than his denial and would be merely a self-serving declaration. We find no error in the exclusion of this testimony.

A further claim of the appellant with reference to evidence is that the court erred in excluding testimony of the appellant and his uncle, Victor Walsh, concerning an alleged offer of Shirley Lynn that she and her husband, Hugh Lynn, would testify favorably to the appellant for ten thousand dollars ($10,000). In support of this claim, counsel says in his brief, "It is believed that same was relevant and material, both substantively and as an explanation of and a legitimate repair measure with respect to the hostile and 'inaccurate' testimony of Mrs. Lynn." To repair Mrs. Lynn's hostile testimony! This is an amazing claim since the defense put her on the witness stand as its witness and as we previously said, with no reason to believe that she would testify any differently than she did. The effort to connect this alleged offer up with Hugh Lynn through a Mr. Donald Long, an ex-prisoner, in the jail, utterly failed. Long testified that Lynn said he would give him a thousand dollars ($1,000), if he would tell

Walsh that he, Walsh, should give Lynn's wife ten thousand dollars ($10,000). Lynn did not tell him what the money was for and, so far as the record is concerned, the message was never communicated to Walsh. This was in February 1961, and Lynn had already made statements to Secret Service agents involving Walsh. (Defendant's Exhibit A.) We find no merit in this claim.

The further claim that the court erred in excluding testimony as to the content of several telephone conversations, between Mrs. Lynn and Victor Walsh concerning this alleged ten-thousand-dollar ($10,000) offer, is equally without merit.

One other claim made by counsel for the appellant is that the appellant could not be convicted on the conspiracy count, for the reason that there is no proof that he ever entered into an agreement with Lynn. The theory of this claim is that Lynn testified that he was forced into the counterfeiting project by Walsh through fear; that entering it by fear he did not agree to it and Walsh could not make an agreement with himself. Thus an agreement, the essential element of conspiracy, was lacking.

The trial judge found, "There isn't any question but what Lynn went along with the deal as he understood it and as he stated it—and I'll get to that in a minute. He was unwilling, but he acquiesced." The judge saw and heard the witnesses and he heard the whole story of the project. He had a right to believe or disbelieve all of the details as narrated by Lynn and he could draw all reasonable inferences from the testimony as a whole. We conclude that there was ample evidence to support a finding that the co-conspirators agreed to enter into the counterfeiting enterprise, as charged in the first count of the indictment.

The appellant was given equal concurrent sentences on each count of the indictment. The judgment must be affirmed, if valid sentences were imposed under either of the other counts of the indictment. United States of America v. Thomas, 303 F.2d 561, C.A. 6, 1962; Davis v. United States, 269 F.2d 357, 363, C.A. 6, cert. denied, 361 U.S. 919, 80 S. Ct. 256, 4 L.Ed.2d 187; Stanley v. United States, 245 F.2d 427, 435, C.A. 6; Strauch v. United States, 223 F.2d 377, 378, C.A. 6, cert. denied, 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746; Singer v. United States, 208 F.2d 477, 480, C.A. 6; Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774.

The evidence fully supports the convictions on all counts of the indictment and finding no error in the record, the judgment of the District Court is affirmed.